FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 29, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMIESON K.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 4:17-CV-05071-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 15, 16. Attorney Chad L. Hatfield represents Jamieson K. (Plaintiff); Special Assistant United States Attorney Sarah Leigh Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 8, 2013, Tr. 86, 99, alleging disability since July 11, 2011, Tr. 262, 269, due to human immunodeficiency virus (HIV), a hearing impairment, and a learning disability, Tr. 369. The applications were

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

denied initially and upon reconsideration. Tr. 179-82, 187-99. Administrative Law Judge (ALJ) Mary Gallagher Dilley held a hearing on July 8, 2015 and heard testimony from Plaintiff and vocational expert, Paul Prachyl. Tr. 37-76. The ALJ issued an unfavorable decision on September 25, 2015. Tr. 20-31. The Appeals Council denied review on March 27, 2017. Tr. 1-7. The ALJ's September 25, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 26, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 46 years old at the alleged date of onset. Tr. 262. His highest level of education was the twelfth grade completed in 1984. Tr. 370. His reported work history includes the jobs of busser/service assistant, cashier, cook, fryer, picker, plant caretaker, and salad bar prepper. Tr. 371, 380. Plaintiff reported that he stopped working on June 1, 2012 because he was laid off for being too slow. Tr. 369. However, he stated that he believed his condition became severe enough to keep him from working as of July 11, 2011. *Id*.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put

another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 25, 2015, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 11, 2011, the alleged date of onset. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: HIV; chronic obstructive pulmonary disease (COPD); hearing loss; and anxiety disorder. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 23.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> He is able to lift and carry 25 pounds occasionally and 20 pounds frequently. He can stand and walk 6 hours in an 8 hour day; he can sit 6 hours in an 8 hour day. He needs to avoid high traffic areas during conversation for understanding instructions due to impaired hearing, to wit: a noise level of 3 or less. He must avoid concentrated exposure to noise, fumes, odors, dusts, gases and hazards. He is able to perform simple and well-learned, more complex tasks. He is capable of having casual interaction with the public, coworkers and supervisors.

Tr. 25. The ALJ identified Plaintiff's past relevant work as cashier II and concluded that Plaintiff was able to perform this past relevant work. Tr. 28-29.

As an alternative to denying Plaintiff's claim at step four, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of housekeeping cleaner, office helper, and parking lot cashier. Tr. 30. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 11, 2011, through the date of the ALJ's decision. *Id*.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the opinion evidence, (2) failing to make a proper step four determination, and (3) failing to make a proper step five determination.

**DISCUSSION**

**1.     Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the opinion evidence from Tae-Im Moon, Ph.D., Jan M. Kouze, Ed.D., CeCilia Cooper, Ph.D., and Stephanie Santos, ARNP. ECF No. 15 at 7-11.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is

required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

A. Tae-Im Moon, Ph.D.

On February 6, 2013, Dr. Moon completed an evaluation of Plaintiff for the Washington Department of Social and Health Services (DSHS). Tr. 710-15. Following a clinical interview, a mental status exam, and a review of DSHS psychological evaluations dated September 22, 2008 and September 26, 2007, Dr. Moon gave Plaintiff a rule out diagnosis of cognitive disorder not otherwise specified related to his HIV. Tr. 711. He opined that Plaintiff had a marked limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions and to learn new tasks. Tr. 712. He also opined that Plaintiff had a moderate limitation in an additional seven basic work activities. *Id*.

The ALJ gave Dr. Moon's opinion "little weight" because (1) it conflicted with Plaintiff's daily activities, (2) it was supplied in a check-the-box format without citations to evidence, and (3) the only evidence Dr. Moon reviewed were prior DSHS evaluations from Plaintiff's prior determination. Tr. 28. Both parties appear to agree that the specific and legitimate standard is appropriate in reviewing the treatment of Dr. Moon's opinion. ECF Nos. 15 at 11; 16 at 5.

The ALJ's first reason, that it conflicts with Plaintiff's daily activities, meets the specific and legitimate standard. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). The ALJ specifically stated that the opined limitations in learning new tasks and/or understanding, remembering and persisting in tasks by following detailed instructions is inconsistent with Plaintiff's reported activities of researching and looking for work online, doing crossword puzzles, and being able to finish what he starts. Tr. 28.

The ALJ further alludes to her discussion of Plaintiff's reported activities contained under Finding 4. *Id*. Plaintiff simply asserts that there are no inconsistencies between the opined limitations and the specific activities listed by the ALJ. ECF No. 15 at 9-10. However, the Court finds that the ALJ's conclusion that the opined limitations were in conflict with Plaintiff's reported activities is supported by the record. The opined limitations were based on a rule out diagnosis of a cognitive disorder. Tr. 711. A cognitive disorder resulting in limitations in an ability to persist in tasks is inconsistent with playing word games, conducting research, and being capable of following through with activities. Therefore, the ALJ's first reason is supported by substantial evidence and meets the necessary standard.

The ALJ's second reason, that Dr. Moon completed a check-the-box form without citations to supporting evidence, is a specific and legitimate reason to assign his opinion lessor weight. The ALJ specifically found that "[b]y checking boxes on a template form instead of providing a narrative RFC [residual functional capacity] assessment with citations to persuasive, credible, evidence, Dr. Moon does not appear to have adequately considered the most the claimant can still do." Tr. 28. This is consistent with Ninth Circuit case law that has expressed a preference for narrative opinions over opinions expressed on a check-the-box form. *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, the Ninth Circuit more recently found that check-the-box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, there are not hundreds of pages of treatment records in support of Dr. Moon's check-the-box form as there was in *Garrison*, however, there is a mental status examination and a clinical interview. Tr. 710-15. Here, the mental status exam and the clinical interview led to only a rule out diagnosis, Tr. 711, and a recommendation for additional psychological

testing to rule out the diagnosis of a cognitive disorder related to HIV, Tr. 713. The mental status exam did demonstrate difficulties in concentration, Tr. 714, but considering this alone was not sufficient to support a confident diagnosis by Dr. Moon, it is also not enough to support the opined limitations. Therefore, the ALJ's reason that the check-the-box form failed to provide citations to specific evidence, is sufficient to support giving the opinion less weight.

The ALJ's third reason, that the only evidence reviewed by Dr. Moon was DSHS consultative reports from 2007 and 2008, is sufficient to give this opinion less weight. The ALJ gave more weight to the opinion of state-agency examiners who reviewed the overall record and provided narrative residual functional capacity statements over the opinion of Dr. Moon, who evaluated Plaintiff but had only reviewed evaluations from 2007 and 2008. Tr. 28. As discussed in more length below, opinions that predate the alleged onset are limited relevance. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Therefore, an opinion that is partially based on non-probative evidence can be granted less weight. There was no error in the ALJ's treatment of Dr. Moon's opinion.

**B.  Jan M. Kouze, Ed.D. and CeCilia Cooper, Ph.D.**

Dr. Kouze completed a psychological evaluation on September 26, 2007 diagnosing Plaintiff with depressive disorder, alcohol abuse in early full remission, and methamphetamine abuse in early full remission. Tr. 503-08. She also opined that Plaintiff had a marked to severe limitation, one marked limitation, and two moderate limitations in areas of cognitive and social basic functioning. Tr. 505.

Dr. Cooper completed a psychological evaluation on February 21, 2008 diagnosing Plaintiff with mixed receptive-expressive language disorder and a personality disorder not otherwise specified. Tr. 603-09. Dr. Cooper also provided a medical source statement that Plaintiff would need supervision to ensure that tasks were completed as instructed and that he would occasionally have

problems with supervisors and coworkers. Tr. 608.

The ALJ did not discuss these opinions specifically by name. However, twice in her decision, she referenced records predating Plaintiff's May 21, 2008 denial for benefits, stating that they were for background information only and that the prior applications were not being reopened. Tr. 20, 28. Plaintiff argues that the ALJ was required to discuss and weigh these opinions. ECF No. 15 at 10. The Court disagrees. These opinions reflect Plaintiff's residual functional capacity during a time period that has already been adjudicated. The doctrine of res judicata precludes the Court from reexamining the Plaintiff's residual functional capacity prior to May 21, 2008 except as a comparison to see if Plaintiff's impairments have worsened. *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir.1989). "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165 (9th Cir. 2008). Here, the ALJ did not apply the presumption of continuing non-disability, Tr. 20-31, so whether or not Plaintiff's impairments have worsened since May 21, 2008 is not an issue. The ALJ is not required to discuss evidence that "is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Therefore, the ALJ's determination refusing to address the medical evidence from the prior application is not an error.

### C. Stephanie Santos, ARNP

On December 2, 2013, Nurse Santos completed a Physical Function Evaluation form for DSHS. Tr. 841-43. She diagnosed Plaintiff with (1) anxiety resulting in moderate limitations in sitting, standing, and communicating, (2) COPD resulting in marked limitations in walking, lifting, carrying, handling, pushing, pulling, reaching, and stooping, (3) HIV resulting in none to mild limitations in lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching, and (4) a hearing impairment resulting in moderate limitations in hearing and communicating. Tr. 842. Nurse Santos then limited Plaintiff to light

work, estimating that this limitation would persist with available medical treatment for his lifetime. Tr. 843. The ALJ gave partial weight to the opinion, agreeing that Plaintiff retains the ability to perform light work, but rejecting the marked limitations resulting from COPD because (1) there was no independent respiratory condition apart from Plaintiff's "smoker's cough," (2) the limitations were not consistent with Nurse Santo's treatment notes, and (3) Nurse Santos did not cite any credible, objective evidence to support this portion of her opinion. Tr. 28. Additionally, the ALJ noted that "there is no indication that Nurse Santos is qualified to assess the claimant's mental functionality." *Id.*

Opinions from nurse practitioners are not considered medical opinions because they are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7), 404.1527(a)(1), 416.927(a)(1). However, the ALJ is required to consider these opinions, 20 C.F.R. §§ 404.1527(f)(1); 416.927(f)(1), and the ALJ can only reject such opinions by providing reasons germane to each witness for doing so. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Here, the ALJ's first reason, that there is not an independent respiratory condition, is not supported by substantial evidence. First, the ALJ found COPD as a severe impairment at step two, Tr. 23, and the ALJ stated earlier in her residual functional capacity discussion, that Plaintiff's COPD was demonstrated by spirometry testing in July of 2013 showing a moderate airway obstruction with a significant response to the bronchodilator, Tr. 26. Therefore, her conclusion that this is nothing more than a "smoker's cough" is inconsistent with her own findings and the objective medical evidence. The Court notes that the July 2013 Pulmonary Function Test is not fully legible as half the page is missing, but the diagnosis appears to include moderate airway obstruction with significant response to bronchodilator. Tr. 844. Furthermore, any assertion by the ALJ that Plaintiff should be denied benefits due to his continued smoking despite being told to stop is considered questionable practice. *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir.

2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."). As such, this reason is not legally sufficient.

The ALJ's second reason, that the limitations were not consistent with Nurse Santo's treatment notes, is supported by substantial evidence and legally sufficient. Once Plaintiff reported that he had run out of his inhaler but was not experiencing acute episodes without it. Tr. 734. Twice Plaintiff reported using the rescue inhaler once a day or less and that he was breathing well. Tr. 846, 849. Twice Plaintiff reported using the inhaler every six hours. Tr. 853, 857. Therefore, there is evidence both for and against the ALJ's determination and the Court defers to the ALJ's findings. *See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.).

The ALJ's third reason, that Nurse Santos failed to cite any credible, objective evidence in support of her opinion, is supported by substantial evidence and legally sufficient. Plaintiff is accurate that Nurse Santos attached the July 2013 Spirometry results, ECF No. 15 at 11 *citing* Tr. 844, but this supports the diagnosis of the COPD, not the opined severity of limitations. This testing showed significant response to the bronchodilator supporting the conclusion that the condition responds well to medication. Therefore, Nurse Santos failed to cite to any objective evidence in support of the severity of the limitations opined.

The ALJ's reference to Nurse Santos' qualification to assess Plaintiff's mental functionality meets the germane standard. Nurse Santos is a nurse practitioner with no stated emphasis or specialty. Tr. 843. A provider's specialization is one of the factors for the ALJ to consider when addressing the opinions from non-acceptable medical sources. 20 C.F.R §§ 404.1527(f)(1), 416.927(f)(1). Therefore, this is an adequate reason to give Nurse Santo's opinion less weight than the opinion of psychologists. Tr. 27-28.

While the first reason provided by the ALJ was not supported by substantial evidence, the subsequent reasons were and they met the germane standard. Therefore, any resulting error would be harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). This Court finds no harmful error in the ALJ's treatment of the opinion evidence.

**2.  Step Four**

Plaintiff alleges that the ALJ failed to properly follow the three step analysis set forth in S.S.R. 82-62 when determining whether a claimant could perform his past relevant work. ECF No. 15 at 11-13.

Social Security Ruling 82-62 promulgated that when finding that an individual has the capacity to perform his past relevant job, the ALJ's decision must contain the following specific findings of fact: (1) a finding of fact as to the claimant's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the claimant's residual functional capacity would permit a return to his past job or occupation.

Plaintiff alleges that the ALJ erred by (1) failing to include all of Plaintiff's limitations in the residual functional capacity determination and (2) failing to compare the specific demands of Plaintiff's past work with his specific functional limitations. ECF No. 15 at 12-13.

Plaintiff's first challenge rests on the assertion that the ALJ erred in his treatment of the opinion evidence when forming the residual functional capacity determination. ECF No. 15 at 12. The Court has found no harmful error on the part of the ALJ for her treatment of the opinion evidence in formulating the residual functional capacity determination. *See supra*. Therefore, Plaintiff's first challenge to the step four determination fails.

Plaintiff's second challenge, that the ALJ failed to compare the specific demands of Plaintiff's past work with his specific functional limitations, is inconsistent with the very specific findings of the ALJ. In coming to her step four determination, the ALJ devoted an entire paragraph to this comparison beginning with the phrase, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work . . ." Tr. 29. The ALJ stated that she accepted the vocational expert's testimony that the claimant could perform this work and that she reviewed the assigned tasks in the Dictionary of Occupational Titles and noise level for the position of cashier II. Therefore, Plaintiff's assertion is unfounded.

Furthermore, if the ALJ did error in forming her step four determination, any resulting error would be deemed harmless since the ALJ continued forward in the analysis and made an alternative step five determination. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

### 3. Step Five

Plaintiff alleges that the hypothetical that was based on the ALJ's residual functional capacity determination and provided to the vocational expert at the hearing lacked several limitations resulting in a flawed step five determination. ECF No. 15 at 13-14. The argument relies on the Court finding the ALJ erred in the treatment of opinion evidence when formulating the residual functional capacity determination. *Id*. The ALJ did not commit harmful error in weighing the opinion evidence when devising her residual functional capacity determination. *See supra*. Therefore, the ALJ did not error in her step five determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED May 29, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE